# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **MESA INDUSTRIES, INC.,** | ) | **Case No. 1:22-cv-160** |
| **4027 Eastern Avenue** | : | |
| **Cincinnati, Ohio 45226** | ) | **(Judge          )** |
| | : | |
| **Plaintiff,** | ) | |
| | : | |
| -v- | ) | **VERIFIED COMPLAINT OF** |
| | : | **MESA INDUSTRIES, INC.** |
| **CHARTER INDUSTRIAL** | ) | **WITH JURY DEMAND** |
| **SUPPLY, INC.** | : | |
| **7832 Ostrow St.** | ) | |
| **San Diego, CA 92111** | : | |
| | ) | |
| **and** | : | |
| | ) | |
| **ALEJANDRO ESPINOZA** | : | |
| **845 N. 11th Avenue** | ) | |
| **Upland, California 91786-4009** | : | |
| | ) | |
| **and** | : | |
| | ) | |
| **KYLE KING** | : | |
| **4311 W 71st Ct** | ) | |
| **Tulsa, OK 74132** | : | |
| | ) | |
| **Defendants.** | : | |

Plaintiff Mesa Industries, Inc. ("Plaintiff" or "Mesa") for its Verified Complaint against Defendants Charter Industrial Supply, Inc. ("Charter"), Alejandro Espinoza ("Espinoza") and Kyle King ("King"), hereby states as follows:

## INTRODUCTION

1.     This is a lawsuit for injunctive relief, including an immediate temporary restraining order to protect Plaintiff's trade secrets, which were misappropriated in part by its former employee, Defendant Espinoza, and provided to his new employer Defendant Charter, a direct competitor of Plaintiff.

2.      Plaintiff also seeks to enforce the Non-Compete and Non-Disclosure Agreement dated February 27, 2012 and the Nondisclosure Agreement dated December 31, 2013 between Defendant Espinoza and Plaintiff.

3.      Plaintiff asserts herein claims for: injunctive relief to enforce Espinoza's obligations in the Non-Compete and Non-Disclosure Agreement and Non-Disclosure Agreement; breach of the Non-Compete and Non-Disclosure Agreement and the Non-Disclosure Agreement by Espinoza; tortious interference with the Non-Compete and Non-Disclosure Agreement and the Nondisclosure Agreement and Plaintiff's business relationships; misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq., and Ohio's Uniform Trade Secrets Act, Ohio Rev. Code § 1331.61, et seq.

4.      This lawsuit is being brought at this time based on the disclosures of a former employee of Defendant Charter, who contacted Plaintiff's management in early 2022 and advised them that: Charter originally began competing with Plaintiff by hiring Plaintiff's former Research & Development Manager to provide designs of Plaintiff's products; Defendant Espinoza took trade secrets from Plaintiff when he resigned and took them to Defendant Charter; Defendant Espinoza is using and will continue to use Plaintiff's trade secrets and confidential information with the knowledge and approval and for the benefit of Defendant Charter; and that Defendants are actively, presently and unlawfully soliciting Plaintiff's customers and unfairly competing with Plaintiff.

**THE PARTIES JURISDICTION AND VENUE**

5.      Plaintiff is a California corporation with its principal place of business and corporate headquarters in Cincinnati, Ohio.

6. Defendant Espinoza was employed by Plaintiff since 2012 and employed by Plaintiff in Cincinnati, Ohio from November 2016 until his resignation in January 2020, after which he became employed by Defendant Charter and relocated to California.

7. Defendant King was employed by Plaintiff in Cincinnati, Ohio from March 2016 until his resignation in March 2018, after which he became employed by Defendant Charter and relocated to Oklahoma.

8. Defendant Charter Industrial Supply, Inc. is a California corporation with representatives located in various states. Charter regularly conducts business in Ohio and advertises partnerships with Ohio based corporations on its website, including but not limited to Eaton Corporation, Parker Hannifin, Dixon, B'laster, Devcon, Sproyon, HBD Thermoid, Titan, Parker Industrial Hose and Force Control.

9. This case involves a claim, among others, arising under the Defend Trade Secrets Act, 18 U.S.C. § 1836. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because much of the conduct giving rise to the claims asserted herein occurred within this judicial district.

11. Defendants are further subject to personal jurisdiction in Ohio under Ohio's long-arm statute, Ohio Rev. Code § 2307.382(A).

## ALLEGATIONS COMMON TO ALL COUNTS

12. Plaintiff is a family owned manufacturer founded in 1967 that produces products for the Petroleum, Mining and Construction industries.

13. A significant part of Plaintiff's business is providing products for above ground storage tanks for terminals and refineries in the Petroleum industry. Among other things,

Plaintiff provides products such as seals and seal systems, floating roof drains, gauge pole covers, leg boots, skimmer systems, vapor bladders, hoses and related hardware.

14.    Plaintiff designed and improved and continues to design and improve its products by investing in research and development.

15.    Plaintiff's products each have a Product Drawing reflecting the specific design features, components, materials, dimensions, revision history, formulations and other information regarding the product's design.

16.    Plaintiff has taken reasonable steps to maintain the secrecy of its Product Drawings.  Plaintiff's Product Drawings are not publicly available and are maintained by Plaintiff in confidentiality, with limited access granted only to employees who have a job related need to access Product Drawings.  Plaintiff's Product Drawings have independent economic value by virtue of the fact that the information included in them is not generally known to the industry, who could profit from their disclosure by copying Plaintiff's products without the need for research and development efforts.

17.    Plaintiff provides products for above ground storage tanks for Petroleum industry customers throughout the United States and the world.

18.    Above ground storage tanks vary significantly and each may require specifically engineered products and services.

19.    Above ground storage tanks require servicing, replacement components and upgrades on a regular basis, dictated by government regulations in some cases.  Various contractors service above ground storage tanks and they and/or the tanks' owners obtain the necessary parts and components from suppliers such as Plaintiff.

20.     Servicing an above ground storage tank requires some period of downtime when the tank is taken out of service by the customer; this downtime results in lost revenues for the customer and, as a result, customers seek to minimize downtime of tanks.

21.     Plaintiff has maintained and continues to maintain an Above Ground Storage Tank Database ("AST Database"), tracking detailed information about its customers' tanks, their components, technical specifications, service history, pricing and other information. The AST Database has been maintained by Plaintiff for over 30 years and contains a compilation of data that is not publically available and could not be replicated without years of effort and expense.

22.     Plaintiff assigned each tank in the AST Database a unique AST number for reference.

23.     Plaintiff also maintains a separate set of Application Drawings regarding each tank in the AST Database. Application drawings provide additional critical information regarding the use of specific products in specific tanks and allow for efficient servicing of tanks without the need to re-engineer products.

24.     Plaintiff has taken reasonable steps to maintain the secrecy of its AST Database and Application Drawings. Plaintiff's AST Database and Application Drawings are not publicly available and are maintained by Plaintiff in confidentiality, with limited access granted only to employees who have a job related need to access the AST Database and/or Application Drawings. Plaintiff's AST Database and Application Drawings have independent economic value by virtue of the fact that the information included in them is not generally known to the industry, who could profit from their disclosure by utilizing Plaintiff's knowledge and expertise developed and maintained over 30 years.

25. Due to tank owners' desire to minimize downtime and the importance of tank reliability, Plaintiff frequently provides parts for tanks that it previously outfitted because past experience with a specific tank allows Plaintiff to more quickly provide the necessary components. Having advance knowledge of a tank's specifications and past service provides a competitive advantage in the marketplace because it allows Plaintiff to anticipate customers' and contractors' needs, prepare parts and components in advance of service and eliminate or minimize engineering issues. This in turn minimizes tank downtime and enhances Plaintiff's ability to compete for business.

26. Plaintiff relies upon its Product Drawings, AST Database and Application Drawings to compete for business. The AST Database advises when a tank could be coming up due for repair, which reduces sales time and costs. Further, having the applicable drawings eliminates further design time and costs.

27. Defendant Espinoza began working for Plaintiff in February 2012. Defendant Espinoza initially worked for Plaintiff as a Quality Control/Design Drafter at Plaintiff's California location.

28. Defendant Espinoza's initial duties included maintaining and updating drawings for existing equipment along with managing quality control standards and objectives. He initially reported to Research & Development Manager Carl Robinson.

29. Upon becoming employed by Plaintiff, Defendant Espinoza executed on February 27, 2012 a Non-Compete and Non-Disclosure Agreement ("NC/ND Agreement"), a true and accurate copy of which is attached hereto and incorporated herein by reference as Exhibit A.

30. Pursuant to paragraph 3 of the NC/ND Agreement, Defendant Espinoza agreed as follows:

"…not to give, divulge, offer or promise (directly or indirectly) to any other company, organization or institution anything of value to MESA which includes, Trade Secrets and Propriety Information such as formulas, processes, materials specifications and designs (current and prototype), pricing information, customer lists, supplier/sub-contractor vendor list, business plans or any other information that is not readily available from published articles and brochures."

31.     Pursuant to paragraph 4 of the NC/ND Agreement, Defendant Espinoza agreed as follows:

"…to reimburse MESA for all legal fees incurred by MESA in the event legal action is required to enforce the terms of this agreement."

32.     On January 7, 2012 and December 9, 2019 Defendant Espinoza executed Employee Handbook Acknowledgment forms, which acknowledge, among other things, the Non-Disclosure Policy included in Plaintiff's Employee Handbook.  That policy states, in pertinent part:

"During the term of employment with Mesa Industries, employees may have access to and become familiar with information of a confidential, proprietary, or secret nature, which is or may be either applicable or related to the present or future business of Mesa Industries, its research and development, or the business of its customers.  For example, trade secret information includes, but is not limited to, devices, inventions, processes and compilations of information, records, specifications, and information concerning customers or vendors. Employees shall not disclose any of the above-mentioned trade secrets, directly or indirectly, or use them in any way, either during the term of their employment or at any time thereafter, except as required in the course of employment with Mesa Industries."

33.     On December 31, 2013, Defendant Espinoza signed a Nondisclosure Agreement (NDA), a true and accurate copy of which is attached hereto and incorporated herein by reference as Exhibit B.

34.     Pursuant to paragraph 2 of the NDA, Defendant Espinoza agreed as follows:

"For the purposes of this Agreement, "Confidential Information" means information that is treated by Company as confidential and which is not made generally available to the public or to competitors of the Company (other than by fault of Promisor), and includes but is not limited to all of Company's trade

secrets, technologies, engineering or operation methods or techniques, research data, formulas, test results, samples of materials and results of any analysis of such samples, marketing plans, service plans, patent applications, patents pending, names of customers or potential customers, customer files, vendor lists, vendor files, contracts, pricing information, cost information, bidding information, sales information, profit or loss information, financial information, licensing agreements, potential licensing agreements, the identity of and information about actual or potential business partners, merger candidates or acquisition candidates, and any other information relating to Company that is treated by Company as confidential and the secrecy of which is maintained by Company using reasonable effort.  Confidential Information also includes any document, tangible article, program or electronic medium that embodies such confidential or proprietary information as described above.  Except as provided in Paragraph 4 below, if Promisor is an Employee of Company, all information disclosed by Company to Promisor during the term of his/her employment shall be deemed the confidential and proprietary information of Company, irrespective of the source or true ownership of such information."

35.    Pursuant to paragraph 3 of the NDA, Defendant Espinoza further agreed as follows:

"Promisor agrees (a) not to use the Confidential Information in any way except for the purpose set forth above; (b) not to analyze or have a third party analyze any tangible products or materials received from Company for chemical composition or content unless such analysis is done by Promisor or on behalf of Promisor with Company's prior approval; (c) to use his/her/its best efforts to prevent and protect the Confidential Information, or any part thereof, from disclosure to any person other than to persons having a need for disclosure in connection with Promisor's authorized use of the Confidential Information with Company's prior written authorization; and (d) to take all steps reasonably necessary to protect the secrecy of the Confidential Information, and to prevent the Confidential Information from falling into the public domain or into the possession of unauthorized persons."

36.    Pursuant to paragraph 6 of the NDA, Defendant Espinoza further agreed as follows:

"If Company shall request the return or elimination of Confidential Information (which shall be described with reasonable particularity in such request), within fifteen (15) calendar days after the receipt of such request, the Promisor shall return the same (including all copies thereof) to the disclosure party, if in tangible form, and/or delete or erase such specified Confidential Information from his/her computer systems.  If Promisor is an employee of Company, then upon the termination of Promisor's employment with Company, Promisor shall promptly,

but in any event within fifteen (15) calendar days following the date of termination, return any and all Confidential Information (and copies thereof) in tangible form, that is held in his/her possession, custody or control and shall delete or erase all such Confidential Information from his/her computer systems."

37.     Pursuant to paragraph 13 of the NDA, Defendant Espinoza further agreed as follows:

"This Agreement and all actions arising under it shall be governed by Ohio law."

38.      In 2016, Plaintiff closed its California location and offered Defendant Espinoza a position in Cincinnati, Ohio along with a relocation package.  Defendant Espinoza accepted the offer on July 13, 2016 and relocated to Ohio in November 2016, where he worked for Plaintiff as a Quality Control/Draftsman.  In 2018, Defendant Espinoza was promoted to Engineer I.

39.     On January 10, 2020, Defendant Espinoza resigned from his employment with Plaintiff, advising Plaintiff's management that he was accepting another position in Cincinnati.

40.     In fact, Defendant Espinoza went to work for Defendant Charter, a direct competitor of Plaintiff and relocated to California where Defendant Charter is headquartered.

41.     Throughout his employment with Plaintiff, Defendant Espinoza was provided access to valuable confidential, proprietary and trade secret business information, including but not limited to the AST Database, Product Drawings, Application Drawings, research and development plans, vendor information, customer information, product/component costs, manufacturing practices, pricing information, and technical data.

42.      Upon learning that Defendant Espinoza was employed by Defendant Charter, Plaintiff caused a letter to be sent to Defendant Espinoza on October 21, 2020, reminding him of his legal obligations with respect to Plaintiff's confidential business information and trade secrets.  A copy of the letter was also sent to Defendant Charter.

43.     Defendant Espinoza responded to the letter on October 27, 2020, giving his assurance that he had not "used and will not use any of Mesa's confidential or trade secret information in any manner including in my employment with Charter Industrial Supply."

44.     Defendant Espinoza's assurance to Plaintiff was false.

45.     Defendant Espinoza misappropriated trade secrets from Plaintiff including but not limited to a copy of Plaintiff's AST Database and Application Drawings. Defendant Espinoza continues to have possession of Plaintiff's trade secrets and uses them with the knowledge of and for the benefit of Defendant Charter.

46.     Upon information and belief, Defendant Espinoza provided drawings and assistance to Defendant Charter while he was still employed by Plaintiff.

47.     Defendant Kyle King began working for Plaintiff in March 2016. Defendant King initially worked for Plaintiff as a Project Engineer at Plaintiff's Cincinnati, Ohio location.

48.     On March 1, 2016, Defendant King executed an Employee Handbook Acknowledgment form, which acknowledged, among other things, the Non-Disclosure policy included in Plaintiff's Employee Handbook.

49.     Defendant King worked for Plaintiff from March 2016 to March 2018 as a Project Engineer. Throughout his employment with Plaintiff, King was provided access to valuable confidential, proprietary and trade secret business information, including but not limited to the AST Database, Product Drawings, Application Drawings, and other financial information of Mesa.

50.     Defendant King resigned from his employment with Plaintiff in April 2018.

51.     King was hired by Defendant Charter in March 2019 as a Business Development Manager and is currently Vice President of Sales.

52.     Defendant King has obtained from Defendant Espinoza Plaintiff's misappropriated trade secrets including but not limited to Plaintiff's AST Database and Application Drawings.  Defendant King continues to have possession of Plaintiff's trade secrets and uses them with the knowledge of and for the benefit of Defendant Charter.

53.     Carl Robinson was hired by Plaintiff in August 2002 as an Engineer and ultimately became Plaintiff's Research & Development Manager.  Robinson resigned from his employment with Plaintiff on July 22, 2013.

54.     Defendant Charter was formed in 2000 and manufactures and sells a variety of industrial products.

55.     In or around 2016, Defendant Charter began directly competing with Plaintiff by manufacturing and selling products for above ground storage tanks, such as tank drains, floating roofs, tank seals, and vapor barriers, to customers in the Petroleum industry.

56.     When Defendant Charter began competing with Plaintiff, it had no experience or expertise with above ground storage tanks or with selling and manufacturing related products.

57.     Rather than developing its own products, Defendant Charter hired Robinson to reproduce drawings of Plaintiff's products so that it could compete with Plaintiff.

58.     Thereafter, Defendant Charter hired several former employees of Plaintiff to assist them with reproducing Plaintiff's products and unfairly competing with Plaintiff, including but not limited to Defendant Espinoza, Defendant Kyle King and William Dominguez.

59.     Defendant Espinoza and Defendant King have used and continue to use Plaintiff's trade secrets by utilizing the confidential information contained in the AST Database and Application Drawings to obtain and service business on behalf of Defendant Charter.

60.    Defendant Charter is aware of Defendants Espinoza's and King's actions and benefits from the continuing misappropriation of Plaintiff's trade secrets.

61.    William Dominguez was employed by Plaintiff from October 2011 until January 2017.  He was hired as National Sales Manager by Defendant Charter in February 2017.  His employment with Defendant Charter ended in or around the winter of 2021.

62.    In January 2022, Dominguez contacted Plaintiff's CEO, Tim Nymberg, and advised him of the misappropriation and misuse of Plaintiff's trade secrets by Defendants.

63.    Among other things, Dominguez stated that Defendant Espinoza has a copy of Plaintiff's AST Database and Application Drawings on a USB thumb drive that he shares with other employees of Defendant Charter, including but not limited to Defendant King, and uses on behalf of Defendant Charter.

64.    When asked for proof of his allegations, Dominguez provided business related text messages exchanged between Dominguez, Defendant Espinoza and Defendant King, true and accurate copies of which are attached hereto and incorporated herein by reference as Exhibit C.

65.    The text messages make reference to specific tanks owned by Plaintiff's customers and identify tanks by their numbers assigned in Plaintiff's AST Database, e.g. "AST - 41079" and "AST 41087".

66.    The text messages show Defendants' use of the AST Database and include screen shots of Plaintiff's Application Drawings and other materials.

67.    The text messages include an exchange in which information is sought regarding chemicals used by Plaintiff from a third party who was apparently unwilling to share the information.  Defendant Espinoza notes, "Wait no need haha" above a texted screen shot

reproducing a portion of Plaintiff's chemical compatibility chart to which Defendant King replies, "There we go."

68.     In other exchanges, information is discussed regarding specific hoses manufactured by Plaintiff and specific tanks belonging to Plaintiff's customers.  Screen shots of Plaintiff's Application Drawings  are texted among Defendant Charter's employees providing the requested information.

69.     The text messages establish that Defendant Espinoza and Defendant King have misappropriated and continue to misappropriate Plaintiff's trade secrets and use them on behalf of Defendant Charter.

70.     Upon information and belief, the text messages provided by Dominguez reflect only a small sampling of the instances of misappropriation and misuse of Plaintiff's trade secrets.

<u>**COUNT I**</u>
**(Breach of Contract- Injunctive Relief)**
**Against Defendant Espinoza**

71.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through and including 70 as if fully set forth herein.

72.     Defendant Espinoza has violated the provisions of the NC/ND Agreement and the NDA.

73.     The NDA provides that it shall be governed by and construed in accordance with the laws of the State of Ohio. See Exhibit B.

74.     Under the laws of the State of Ohio, the NDA and NC/ND Agreement are enforceable.

75. The provisions in the NDA and NC/ND Agreement which prohibit Defendant Espinoza from using or disclosing Plaintiff's confidential information and trade secrets are reasonable in scope.

76. Plaintiff has a legitimate protectable interest in its confidential, proprietary and trade secret information.

77. Thus, the terms of the NDA and NC/ND Agreement are reasonable and enforceable under the laws of the State of Ohio.

78. Plaintiff will suffer irreparable harm if injunctive relief is not entered by this Court to enforce the post-employment restrictions against Defendant Espinoza contained in the NDA and NC/ND Agreements.

79. The equities favor the granting of immediate injunctive relief by way of a temporary restraining order and subsequent injunctive relief on a preliminary and permanent basis against Defendant Espinoza to enforce the covenants contained in the NDA and NC/ND Agreement as such restrictions do not require Espinoza's employment with Defendant Charter to be terminated.

80. Plaintiff has no adequate remedy at law to protect its interests and rights for enforcement and injunctive relief against Defendant Espinoza.

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order temporarily and immediately enjoining and restraining Defendant Espinoza, and any person or entity acting in concert with Defendant Espinoza, specifically including but not limited to Defendant Charter and Defendant King, from: (a) using any confidential, proprietary or trade secret information of Plaintiff in any manner; and (b) retaining any confidential, proprietary or trade secret information of Plaintiff.

## COUNT II
### (Breach of Contract- Damages)
### Against Defendant Espinoza

81.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through and including 80 as if fully set forth herein.

82.     The conduct of Defendant Espinoza in using and/or disclosing Plaintiff's proprietary and confidential information and trade secrets contained in the AST Database and Application Drawings, constitutes a breach of Defendant Espinoza's NC/ND Agreement and NDA.

83.     Plaintiff has been damaged as a result of the breaches of the contractual obligations owed to Plaintiff by Defendant Espinoza in an amount to be proven at trial.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment for breach of contract in Count II against Defendant Espinoza and award such damages as will be ascertained with specificity at the trial of this action, plus attorneys' fees and costs, and for such other and further affirmative relief in favor of Plaintiff and against Defendants as the Court may deem just and proper in the circumstances.

## COUNT III
### (Breach of Duty of Loyalty)
### Against Defendant Espinoza

84.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through and including 83 as if fully set forth herein.

85.     Defendant Espinoza as an employee of Plaintiff, owed Plaintiff a duty of loyalty to not act contrary to Plaintiff's interests during his employment with Plaintiff.

86.     As part of his duty of loyalty, Defendant Espinoza had a duty not to engage in the unlawful conduct as described herein in misappropriating, using and/or disclosing Plaintiff's

confidential information and trade secrets during the period of time for which Defendant Espinoza was being compensated by Plaintiff and/or employed by Plaintiff.

87.     By and through his conduct as described more fully herein, and on information and belief, Defendant Espinoza acted contrary to Plaintiff's interest during his employment with Plaintiff and acted to assist a direct competitor of Plaintiff, specifically Defendant Charter.

88.     Such acts of disloyalty by Defendant Espinoza went beyond mere planning and preparation to fairly compete with Plaintiff after resigning from Plaintiff's employment.

89.     Plaintiff has been damaged as a result of Defendant Espinoza's conduct in breaching his duty of loyalty.

90.     Defendant Espinoza's actions in this regard were done maliciously, willfully, wantonly and/or with reckless disregard for Plaintiff's rights.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment for breach of loyalty in Count III against Defendant Espinoza and award such damages as will be ascertained with specificity at the trial of this action, plus punitive damages, attorneys' fees and costs, and for such other and further affirmative relief in favor of Plaintiff and against Defendant Espinoza as the Court may deem just and proper in the circumstances.

## COUNT IV
### (Tortious Interference with Contractual Relationship)
### Against Defendant Charter

91.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through and including 90 as if fully set forth herein.

92.     At all times relevant herein contractual agreements existed between Defendant Espinoza and Plaintiff, specifically the NC/ND Agreement and the NDA.

93.     Defendant Charter was aware of the existence of these agreements, and specifically was aware of Defendant Espinoza's obligation to retain the confidentiality of Plaintiff's confidential, proprietary, and trade secret information.

94.     Defendant Charter, intentionally and without justification, caused Defendant Espinoza to breach the NC/ND Agreement and the NDA.

95.     Defendant Charter has benefited from Defendant Espinoza's breach of his contractual obligations to Plaintiff.

96.     The actions of Defendant Charter were malicious, willful, wanton, and/or with reckless disregard for Plaintiff's rights.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment for tortious interference with contractual relationship in Count IV against Defendant Charter and award such damages as will be ascertained with specificity at the trial of this action, plus punitive damages, attorneys' fees and costs, and for such other and further affirmative relief in favor of Plaintiff and against Defendant Charter as the Court may deem just and proper in the circumstances.

<u>**COUNT V**</u>
**(Misappropriation of Trade Secrets/Defend Trade Secrets Act- Injunctive Relief)**
**Against All Defendants**

97.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through and including 96 as if fully set forth herein.

98.     Pursuant to the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, et seq., this Court may act in equity to enjoin threatened misappropriations of Trade Secrets.

99.    Plaintiff entrusted the afore-described confidential and proprietary information and trade secret information to Defendant Espinoza solely for his use in performing his employment duties for the benefit of Plaintiff.

100.    Plaintiff provided written notice to Defendant Espinoza through the NC/ND Agreement, NDA and Nondisclosure Policy of the confidential, proprietary and trade secret nature of the afore-described confidential information provided to Defendant Espinoza during his employment with Plaintiff.

101.    Plaintiff provided written notice to Defendant King through the Nondisclosure Policy of the confidential, proprietary and trade secret nature of the afore-described confidential information provided to Defendant King during his employment with Plaintiff.

102.    The afore-described confidential and proprietary information provided and entrusted to Defendants Espinoza and King contained information which derived economic value from not being generally known by others or readily accessible by proper means, and Plaintiff has taken reasonable steps under the circumstances to maintain its secrecy.

103.    Such information was and is a trade secret under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, et seq.

104.    Defendant Espinoza, while knowing that the information entrusted to him was Plaintiff's confidential, proprietary and trade secret information, has misappropriated such information for his own personal gain and/or for the personal gain and benefit of others (specifically Defendant Charter), and to the harm and detriment of Plaintiff.

105.    Plaintiff put Defendant Charter on notice of its obligation to refrain from using and misappropriating its confidential, proprietary and trade secret information, and Defendant Charter purposefully engaged in the wrongful conduct described herein.

106.    Defendant King while knowing that the information he obtained from Defendant Espinoza was Plaintiff's confidential, proprietary and trade secret information, has misappropriated such information for his own personal gain and/or for the personal gain and benefit of others (specifically Defendant Charter), and to the harm and detriment of Plaintiff.

107.    Defendants actions violated the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, et seq., and such actions were done maliciously, willfully, wantonly and/or with reckless disregard for Plaintiff's rights.

108.    The misappropriation of trade secrets has and will proximately cause substantial damages to Plaintiff including, but not limited to, loss of goodwill, unjust enrichment, potential lost profits, potential lost revenue, and future loss of the same amount to be determined at trial.

109.    Unless Defendants and all those acting in concert with them are preliminarily and permanently enjoined from misusing, converting, disclosing, and misappropriating Plaintiff's confidential, proprietary, and trade secret information, Plaintiff will suffer immediate and irreparable injury, loss, or damages for which there is no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment for misappropriation of trade secrets under the Defend Trade Secrets Act in Count V against Defendants, enter an injunctive order to prohibit any further disclosure or use of any trade secrets of Plaintiff and for such other and further affirmative relief in favor of Plaintiff and against Defendants as the Court may deem just and proper in the circumstances.

### <u>COUNT VI</u>
### (Misappropriation of Trade Secrets/Defend Trade Secrets Act- Damages)
### Against All Defendants

110.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through and including 109 as if fully set forth herein.

111. Plaintiff entrusted the afore-described confidential and proprietary information and trade secret information to Defendant Espinoza solely for his use in performing his employment duties for the benefit of Plaintiff.

112. Plaintiff provided written notice to Defendant Espinoza through the NC/ND Agreement, NDA and Nondisclosure Policy of the confidential, proprietary and trade secret nature of the afore-described confidential information provided to Defendant Espinoza during his employment with Plaintiff.

113. Plaintiff provided written notice to Defendant King through the Nondisclosure Policy of the confidential, proprietary and trade secret nature of the afore-described confidential information provided to Defendant King during his employment with Plaintiff.

114. The afore-described confidential and proprietary information provided and entrusted to Defendants Espinoza and King contained information which derived economic value from not being generally known by others or readily accessible by proper means, and Plaintiff has taken reasonable steps under the circumstances to maintain its secrecy.

115. Such information was and is a trade secret under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, et seq.

116. Defendant Espinoza, while knowing that the information entrusted to him was Plaintiff's confidential, proprietary and trade secret information, has misappropriated such information for his own personal gain and/or for the personal gain and benefit of others (specifically Defendant Charter), and to the harm and detriment of Plaintiff.

117. Plaintiff put Defendant Charter on notice of its obligation to refrain from using and misappropriating its confidential, proprietary and trade secret information, and Defendant Charter purposefully engaged in the wrongful conduct described herein.

118.    Defendant King while knowing that the information he obtained from Defendant Espinoza was Plaintiff's confidential, proprietary and trade secret information, has misappropriated such information for his own personal gain and/or for the personal gain and benefit of others (specifically Defendant Charter), and to the harm and detriment of Plaintiff.

119.    Defendants actions violated the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, et seq., and such actions were done maliciously, willfully, wantonly and/or with reckless disregard for Plaintiff's rights.

120.    As a direct and proximate result of Defendants' unlawful conduct, they are liable to Plaintiff is an amount to be determined at trial.

121.    Defendants misappropriated Plaintiff's trade secrets knowingly, willfully maliciously, intentionally, and in bad faith as to warrant the imposition of punitive damages and attorneys' fees in an amount to be determined at trail.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment for misappropriation of trade secrets under the Defend Trade Secrets Act in Count VI against Defendants and award such damages as will be ascertained with specificity at the trial of this action, plus punitive damages, attorneys' fees and costs, and for such other and further affirmative relief in favor of Plaintiff and against Defendants as the Court may deem just and proper in the circumstances.

### COUNT VII
**(Misappropriation of Trade Secrets/Ohio Uniform Trade Secrets Act- Injunctive Relief)**
**Against All Defendants**

122.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through and including 122 as if fully set forth herein.

123.    Pursuant to the Ohio Uniform Trade Secrets Act, Ohio R.C. §1333.61, et seq., this Court may act in equity to enjoin threatened misappropriations of Trade Secrets.

124.    Plaintiff entrusted the afore-described confidential and proprietary information and trade secret information to Defendant Espinoza solely for his use in performing his employment duties for the benefit of Plaintiff.

125.    Plaintiff provided written notice to Defendant Espinoza through the NC/ND Agreement, NDA and Nondisclosure Policy of the confidential, proprietary and trade secret nature of the afore-described confidential information provided to Defendant Espinoza during his employment with Plaintiff.

126.    Plaintiff provided written notice to Defendant King through the Nondisclosure Policy of the confidential, proprietary and trade secret nature of the afore-described confidential information provided to Defendant King during his employment with Plaintiff.

127.    The afore-described confidential and proprietary information provided and entrusted to Defendants Espinoza and King contained information which derived economic value from not being generally known by others or readily accessible by proper means, and Plaintiff has taken reasonable steps under the circumstances to maintain its secrecy.

128.    Such information was and is a trade secret under the Ohio Uniform Trade Secrets Act, Ohio R.C. §1333.61, et seq.

129.    Defendant Espinoza, while knowing that the information entrusted to him was Plaintiff's confidential, proprietary and trade secret information, has misappropriated such information for his own personal gain and/or for the personal gain and benefit of others (specifically Defendant Charter), and to the harm and detriment of Plaintiff.

130.     Plaintiff put Defendant Charter on notice of its obligation to refrain from using and misappropriating its confidential, proprietary and trade secret information, and Defendant Charter purposefully engaged in the wrongful conduct described herein.

131.     Defendant King while knowing that the information he obtained from Defendant Espinoza was Plaintiff's confidential, proprietary and trade secret information, has misappropriated such information for his own personal gain and/or for the personal gain and benefit of others (specifically Defendant Charter), and to the harm and detriment of Plaintiff.

132.     Defendants actions violated the Ohio Uniform Trade Secrets Act, Ohio R.C. §1333.61, et seq., and such actions were done maliciously, willfully, wantonly and/or with reckless disregard for Plaintiff's rights.

133.     The misappropriation of trade secrets has and will proximately cause substantial damages to Plaintiff including, but not limited to, loss of goodwill, unjust enrichment, potential lost profits, potential lost revenue, and future loss of the same amount to be determined at trial.

134.     Unless Defendants and all those acting in concert with them are preliminarily and permanently enjoined from misusing, converting, disclosing, and misappropriating Plaintiff's confidential, proprietary, and trade secret information, Plaintiff will suffer immediate and irreparable injury, loss, or damages for which there is no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment for misappropriation of trade secrets under the Ohio Uniform Trade Secrets Act in Count VII against Defendants, enter an injunctive order to prohibit any further disclosure or use of any trade secrets of Plaintiff and for such other and further affirmative relief in favor of Plaintiff and against Defendants as the Court may deem just and proper in the circumstances.

**COUNT VIII**
**(Misappropriation of Trade Secrets/Ohio Uniform Trade Secrets Act- Damages)**
**Against All Defendants**

135.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through and including 135 as if fully set forth herein.

136.    Plaintiff entrusted the afore-described confidential and proprietary information and trade secret information to Defendant Espinoza solely for his use in performing his employment duties for the benefit of Plaintiff.

137.    Plaintiff provided written notice to Defendant Espinoza through the NC/ND Agreement, NDA and Nondisclosure Policy of the confidential, proprietary and trade secret nature of the afore-described confidential information provided to Defendant Espinoza during his employment with Plaintiff.

138.    Plaintiff provided written notice to Defendant King through the Nondisclosure Policy of the confidential, proprietary and trade secret nature of the afore-described confidential information provided to Defendant King during his employment with Plaintiff.

139.    The afore-described confidential and proprietary information provided and entrusted to Defendants Espinoza and King contained information which derived economic value from not being generally known by others or readily accessible by proper means, and Plaintiff has taken reasonable steps under the circumstances to maintain its secrecy.

140.    Such information was and is a trade secret under the Ohio Uniform Trade Secrets Act, Ohio R.C. §1333.61, et seq.

141.    Defendant Espinoza, while knowing that the information entrusted to him was Plaintiff's confidential, proprietary and trade secret information, has misappropriated such

information for his own personal gain and/or for the personal gain and benefit of others (specifically Defendant Charter), and to the harm and detriment of Plaintiff.

142.    Plaintiff put Defendant Charter on notice of its obligation to refrain from using and misappropriating its confidential, proprietary and trade secret information, and Defendant Charter purposefully engaged in the wrongful conduct described herein.

143.    Defendant King while knowing that the information he obtained from Defendant Espinoza was Plaintiff's confidential, proprietary and trade secret information, has misappropriated such information for his own personal gain and/or for the personal gain and benefit of others (specifically Defendant Charter), and to the harm and detriment of Plaintiff.

144.    Defendants actions violated the Ohio Uniform Trade Secrets Act, Ohio R.C. §1333.61, et seq., and such actions were done maliciously, willfully, wantonly and/or with reckless disregard for Plaintiff's rights.

145.    As a direct and proximate result of Defendants' unlawful conduct, they are liable to Plaintiff is an amount to be determined at trial.

146.    Defendants misappropriated Plaintiff's trade secrets knowingly, willfully maliciously, intentionally, and in bad faith as to warrant the imposition of punitive damages and attorneys' fees in an amount to be determined at trail.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment for misappropriation of trade secrets under the Defend Trade Secrets Act in Count VIII against Defendants and award such damages as will be ascertained with specificity at the trial of this action, plus punitive damages, attorneys' fees and costs, and for such other and further affirmative relief in favor of Plaintiff and against Defendants as the Court may deem just and proper in the circumstances.

**JURY DEMAND**

Plaintiff demands a trial by jury of all issues properly triable.

Respectfully submitted,


_/s/ Mark J. Chumley_
Mark J. Chumley (0067321)
Gregory J. Robinson (0091290)
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street
Suite 1400
Cincinnati, Ohio 45202
Tel. (513) 579-6400
Fax: (513) 579-6457
Attorneys for Plaintiff,
Mesa Industries, Inc.


**INSTRUCTIONS TO CLERK**

Please serve the Verified Complaint of Mesa Industries, Inc. with Jury Demand and Summons on Defendants Charter Industrial Supply, Inc., Alejandro Espinoza, and Kyle King via certified mail, return receipt requested.


_/s/ Mark J. Chumley_
Mark J. Chumley (0067321)

## **Verification**

I am the Chief Executive Officer of Mesa Industries, Inc., the named Plaintiff in this action. I have reviewed the foregoing Verified Complaint and, pursuant to 28 U.S.C. § 1746 and to the best of my knowledge, information and belief, I verify under penalty of perjury that the foregoing is true and correct. Executed on March 28, 2022.

Timothy Nymberg

11613216.1